LIA VILLARI and Another, as Executrices of ANNETTA VILLARI, Deceased, Landlord, *v.* MARGARET DUGGAN and Another, Copartners Doing Business under the Firm Name and Style of CALEDONIAN TEA ROOM, Tenants.

Municipal Court of New York, Borough of Manhattan, Ninth District, September 14, 1931.

*Menken Brothers*, for the landlord.

*Leon Axelrod*, for the tenants.

PRINCE, J. This proceeding is brought by the executrices of the deceased on behalf of the estate, as landlord, for the non-payment of rent due under a written lease. The lease was for a term of twenty-one years, and provided merely that the said premises, describing the same by metes and bounds, is demised and let unto the lessees, the tenants in this proceeding, at annual rentals

stipulated therein. In 1922 the premises had been altered by the previous owners from a one-family dwelling to a six-family dwelling. At the time of the execution of this lease, in October, 1930, the premises consisted of a six-family multiple dwelling, which the tenants thereafter sublet to six subtenants, who occupied the house as their residence, living separately and apart.

The tenants do not deny their failure to pay the rent demanded in the precept, but plead as an affirmative defense that the landlord, for the period for which rent is sought to be recovered, did not procure from the building department a certificate of occupancy, as required by section 301 of the Multiple Dwelling Law, and that by reason thereof they invoke the penalty prescribed by section 302 of the Multiple Dwelling Law, which provides that if any building be occupied in whole or in part in violation of section 301, "no rent shall be recovered by the owner or lessee of such premises for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for non-payment of such rent."

There is no dispute about the fact that at no time prior to the commencement of these proceedings had a certificate of occupancy been issued.

The landlord contends that, with reference to multiple dwellings constructed prior to 1929, when the Multiple Dwelling Law was enacted, section 301 thereof applies only to tenement houses, and that the dwelling leased to the tenants herein is not a tenement house.

Section 301 provides in part as follows: "No *tenement house* shall hereafter be occupied in whole or in part for human habitation until the issuance of a certificate by the department charged with the enforcement of the tenement house law or of this chapter that said building conforms in all respects to the requirements of the tenement house law or of this chapter. No building hereafter constructed as or altered or converted into a multiple dwelling shall be occupied in whole or in part for human habitation until the issuance of a certificate by the department charged with the enforcement of this chapter that said building conforms in all respects to the requirements of this chapter."

It will be noted that the prohibition contained in the above section affects only multiple dwellings "hereafter constructed," but that as to already existing buildings, only tenement houses are designated.

That it is intended to distinguish a tenement house from other types of multiple dwellings is apparent from section 4, which defines a multiple dwelling and a tenement house, respectively, as follows:

" A ' multiple dwelling ' is a dwelling which is * * * occupied as the abode, residence or home of three or more families living independently of each other. * * * A ' class A ' multiple dwelling is a multiple dwelling which is occupied, as a rule, for residence purposes and not transiently. This class shall be deemed to include and shall include *tenement houses* * * *.

" A ' tenement house ' is any house or building or any portion thereof, *heretofore erected*, which is * * * occupied, in whole or in part, as the home or residence of three families or more, living independently of each other *and doing their cooking upon the premises.*"

It would seem, therefore, that under the Multiple Dwelling Law a tenement house is one kind of " Class A " multiple dwelling. The requirements of the Multiple Dwelling Law are restricted to the kind or class of dwelling specified, as provided by section 12: " All the requirements of this chapter shall apply to all kinds and classes of multiple dwellings, *except that where provisions apply specifically to one or more classes or kinds of dwellings, such provisions shall apply only to those classes or kinds to which such specific reference is made;* and to the extent that such provisions are inconsistent with requirements which would in the absence of such provisions control, such requirements shall not be deemed applicable."

This interpretation of the statute is strengthened by the fact that throughout the chapter, requirements are prescribed only for multiple dwellings, with the exception of article 7, which is entirely devoted to tenement houses, and which provides, in section 210, as follows: " Application of article seven. The provisions of this article shall apply to tenement houses erected and occupied as such prior to the time when this chapter becomes effective, and such provisions shall be applied to such multiple dwellings *in addition to all other provisions* of this chapter not expressly relating to dwellings hereafter erected."

In other words, a distinction is made between multiple dwellings heretofore erected, and tenement houses heretofore erected, for which latter class of multiple dwellings additional requirements are enumerated in that article.

The next question to be determined is whether the dwelling let to the tenants herein is a tenement. The evidence disclosed that each apartment consisted of a living room, a bedroom and a bathroom, and nothing else. There was nothing in each apartment that could be called a kitchen, pantry, a serving pantry, or any other kind of a room, closet or even space where cooking or anything in the nature of cooking was provided for. Whatever cooking was done on the premises was performed by means of attaching

to an electric outlet in the living room or bedroom, provided merely for lighting purposes, a certain electrical cooking appliance, and there were no facilities for cooking by gas. It was testified, and I find as a fact, that whatever cooking was performed was surreptitious, irregular and occasional, and so performed without the aid of facilities expressly provided for that purpose, and that the legitimate facilities for lighting the apartment were occasionally diverted to forbidden uses, without the knowledge and consent of the landlord.

One of the elements that distinguishes a tenement house from other multiple dwellings, under the definitions heretofore quoted, is that the families living in a tenement house do their cooking upon the premises. In construing a similar provision of the Tenement House Law, which was superseded by the Multiple Dwelling Law, the court, in the case of *Apartment Hotel Owners Association* v. *City of New York* (133 Misc. 881), held that unauthorized cooking of the character above described is not sufficient to classify a dwelling as a tenement house, but that the cooking must be shown to be done with the consent of the landlord.

Since section 301, except as to buildings " hereafter constructed," applies only to tenement houses, and since the multiple dwelling leased to these tenants is not a tenement house, the landlord was not required to obtain a certificate of occupancy and the defense of the tenants must fail.

Judgment for the landlord awarding a final order.